UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:05cr264 |
| | ) | |
| THOMAS MOROCCO HAGER | ) | |

**MEMORANDUM OPINION**

In this capital case, defendant Thomas Morocco Hager was tried and convicted of killing Barbara White while engaged in a drug trafficking conspiracy in violation of the Anti-Drug Abuse Act, 21 U.S.C. §§ 846, 841(a)(1), and 848(e)(1)(A) (ADAA).[1] The trial, which occurred over five weeks in October, 2007, was trifurcated into three phases: (i) the guilt-innocence phase; (ii) the death penalty eligibility phase; and (iii) the death penalty selection phase. At the conclusion of the first phase of the trial the jury unanimously found beyond a reasonable doubt that defendant was guilty of the intentional killing of Barbara White while engaged in a conspiracy to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 848(e)(1)(A). Next, the jury found that defendant was statutorily eligible for the death penalty, as the government had proved beyond a reasonable doubt the statutorily required aggravating eligibility factors. *See* 18 U.S.C. § 3593(c) (1994); 21 U.S.C. § 848(n) (1996).[2] The jury then unanimously recommended that defendant be sentenced to death. Defendant was then sentenced to death in accordance with the jury's recommendation, as required by 21 U.S.C. § 848(l) (1996).

---

[1] A more complete recital of the facts is contained in an Order of even date.

[2] Although the statutory aggravating factors are listed in 21 U.S.C. § 848(n), the procedure for proving their existence is established in 18 U.S.C. § 3593(c), for the reasons elucidated herein.

1

Prior to trial, defendant moved to dismiss the government's notice of special findings and notice of intent to seek the death penalty. This motion was denied by Order dated March 30, 2007. United States v. Hager, 1:05cr264 (E.D. Va. March 30, 2007) (order). The purpose of this Memorandum Opinion is to elucidate the reasons underlying the denial of this motion, and to further explain the applicability of the ADAA and FDPA in the sentencing of this defendant.

A grand jury returned a Second Superceding Indictment on May 4, 2006, charging defendant with murder while engaged in a conspiracy to traffic drugs in violation of the ADAA, 21 U.S.C. § 848(e)(1)(A). Congress had amended § 848 two months earlier, removing subsections (g)-(o) and effectively consolidating the procedural provisions of the ADAA regarding the death penalty with the substantially identical procedural provisions of the Federal Death Penalty Act, 18 U.S.C. § 3591 *et seq.* (1994) (FDPA). Defendant moved to dismiss the government's notice of special findings and notice of intent to seek a sentence of death on the ground that the prior repeal of subsections (g)-(o) rendered the Second Superceding Indictment defective. This motion was denied.

Defendant's motion raised a number of issues that must be addressed in turn. First it is necessary to determine whether subsections (g)–(o) continue to apply to defendant's sentencing, notwithstanding their repeal, by virtue of the General Savings Statute, 1 U.S.C. § 109 (1947) ("Savings Statute"). Because the Savings Statute does not save all of the repealed subsections, it is next necessary to determine whether the FDPA can be applied to provide a sentencing procedure in this case.

**I.**

Defendant was indicted under 21 U.S.C. § 848, and the government gave notice of its intent to seek the death penalty pursuant to that statute. Prior to the indictment, Congress repealed §

848(g)-(o). Defendant argues that he cannot be sentenced under § 848 given Congress's repeal of these subsections. Accordingly, it is first necessary to determine whether any of the repealed subsections of § 848 remain in affect as applied to this defendant under the Savings Statute. That statute provides in pertinent part that:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109. The Savings Statute specifically applies to a penalty, forfeiture, or liability; it does not apply to remedies or procedures. It follows that the Savings Statute can only preserve those repealed subsections of § 848 that are substantive in effect rather than merely procedural.[3] Of course, in some circumstances the line between the substantive and the procedural may be indistinct and difficult to draw. But for the purposes of the Savings Statute, it is settled that a substantive provision of a statute is one that affects a defendant's "substantive rights and liabilities," but not one that merely prescribes "remedies or procedure." United States v. Obermeier, 186 F.2d 243, 254-55 (2d Cir. 1954) ("1 U.S.C.A. § 109 . . . saves merely substantive 'rights' and 'liabilities.'"). Accordingly, the Savings Statute applies only to those parts of subsections (g)-(o) that affect defendant's substantive rights and liabilities.

Subsection (g) provides that a defendant may be sentenced to death only following a hearing held pursuant to the procedural provisions of § 848. In other words, subsection (g) identifies the

---

[3] Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 661-62 (1974) ("[T]he general savings clause does not ordinarily preserve discarded remedies or procedures."); see also Hertz v. Woodman, 218 U.S. 205, 218 (1910) ("[A]s the later clause applied to remedies and procedure, it was not, by implication, in conflict with the general provision of [the savings statute], which saved penalties, forfeitures, and liabilities.").

procedures by which a defendant may be sentenced to death. Subsection (g) is procedural, and thus is not preserved by the Savings Statute.

Subsection (h) requires the government to provide notice that it intends to seek a death sentence and to set forth the aggravating factors it intends to prove. Subsection (h) is plainly procedural, and thus it is also not saved by the Savings Statute.

Subsection (i) requires a separate hearing to determine the punishment to be imposed following a conviction or guilty plea. Subsection (i) is procedural, and also is not saved by the Savings Statute.

Subsection (j) contains both substantive and procedural elements. Some portions of the subsection merely prescribe the order in which the parties may present aggravating and mitigating evidence; these portions are therefore procedural and are not preserved by the Savings Statute. Yet, other portions of the subsection identify the type of information that may be introduced relating to aggravating and mitigating factors and identify the standard under which such information may be excluded. These portions plainly affect the rights and liabilities of a defendant: they identify the type of evidence that may be admitted, not the manner in which the evidence may be admitted. Accordingly, the portions of subsection (j) that identify the type of information that may be introduced relating to aggravating and mitigating factors, as well as the portions of subsection (j) that identify the standard under which such information may be excluded, are substantive and are saved by the Savings Statute.

It is important to note that the partial repeal of subsection (j) has no practical effect in this case. The Federal Death Penalty Act—which applies to this defendant for the reasons set forth below—contains a substantially identical subsection. See 18 U.S.C. § 3593(c). The only substantive

difference between § 848(j) and § 3593(c) is the standard for admission or exclusion of evidence relating to an aggravating or mitigating factor. Under § 848(j), such evidence may be excluded "if its probative value is <u>substantially</u> outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," while under § 3593(c) such evidence may be excluded "if its probative value is <u>outweighed</u> by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." In other words, § 848(j) imposes a more stringent standard for the exclusion of evidence, while § 3593(c) imposes a more lenient standard for exclusion. Yet, although the Savings Clause preserved the § 848(j) standard in this case, the Court, with the government's acquiescence, applied the more favorable § 3593(c) standard with regard to aggravating factor evidence to ensure that the defendant suffered no prejudice. Moreover, the probative value of every piece of evidence excluded at sentencing was found to be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, while the probative value of every piece of evidence admitted at sentencing was found not to be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Accordingly, the partial repeal of § 848(j) had no practical effect on this trial.

Subsection (k) establishes the procedure for the return of findings by the fact-finder. Subsection (k) is procedural and is not saved by the Savings Clause.

Subsection (l) requires the imposition of a death sentenced upon a recommendation of such a sentence by the jury, and bars the imposition of a death sentence upon a defendant who was a minor at the time of the crime or who is mentally retarded or mentally disabled. Subsection (l) affects a defendant's substantive rights and liabilities, and accordingly it is saved by the Savings Statute.

Subsection (m) lists certain mitigating factors that <u>must</u> be considered by the finder of fact. Similarly, subsection (n) lists certain aggravating factors that <u>may</u> be considered by the finder of fact. Because these subsections address the type of aggravating and mitigating information that may be introduced, rather than the manner in which such information is introduced, these subsections affect the rights and liabilities of the defendant. Accordingly, subsections (m) and (n) are saved by the Savings Statute.

Subsection (o) prohibits the jury from considering the race, color, religious beliefs, national origin, or sex of the defendant or the victim when considering whether a death sentence is justified. Subsection (o) also requires the jurors to certify that consideration of those factors was not involved in their individual decisions. Subsection (o) affects the rights and liabilities of the defendant, and accordingly it is saved by the Savings Statute.

In sum, § 848(l), (m), (n), and (o) affect the rights and liabilities of the defendant, and accordingly these subsections are saved by the Savings Statute and were applied to defendant in this case. Further, § 848(j) is substantive in part and is saved by the Savings Statute insofar as it identifies the type of information that may be introduced at sentencing and prescribes the standard for exclusion of such evidence. By contrast, § 848 (g), (h), (i), and (k) prescribe procedures, and they are not saved by the Savings Statute. Further, § 848(j) is procedural in part and is not saved by the Savings Statute insofar as it prescribes the order of admittance of information at sentencing.

## II.

Because the Savings Statute does not save every repealed provision of § 848, it is next necessary to determine whether the Federal Death Penalty Act can supply the sentencing procedure for this case. Defendant argues that application of the FDPA would violate the *Ex Post Facto* Clause

because the statute was passed after he murdered Barbara White. Because the pertinent provisions of the FDPA are procedural rather than substantive, the *Ex Post Facto* Clause does not prohibit their application in this case.

The Constitution provides that "[n]o bill of attainder or ex post facto law shall be passed" by Congress. U.S. Const. Art. I § 9. An *ex post facto* law is one that retroactively alters the definition of a crime or increases the punishment for a criminal act. Collins v. Youngblood, 497 U.S. 37, 43 (1990). And the Supreme Court has held that laws changing the procedures by which a criminal case is adjudicated, rather than changing the substantive law of crimes, do not violate the *Ex Post Facto* Clause. Id. at 45.

The provisions of the FDPA at issue here are procedural rather than substantive because they prescribe the "procedures by which a criminal case is adjudicated," but do not change the substantive law of crimes. Id. Specifically, 18 U.S.C. § 3593(a) requires the government to give notice of its intent to seek the death penalty and to set forth the aggravating factors it seeks to prove; § 3593(b) requires a separate hearing to determine the punishment to be imposed following a conviction or guilty plea; § 3593(c) establishes, in pertinent part, the order in which the parties may present aggravating and mitigating evidence;[4] and § 3593(d) & (e) establish the procedure for the return of findings by the fact-finder. These provisions, which were complied with in this case, are all procedural for the purposes of *Ex Post Facto* Clause analysis: they establish the procedures by which

---

[4] Section 3593(c) also identifies the type of information relating to aggravating and mitigating factors that may be introduced at sentencing, as well as the standard under which such information may be excluded. For the reasons discussed in relation to 21 U.S.C. § 848(j), these provisions are substantive in nature; accordingly, their application would violate the *Ex Post Facto* Clause. For the reasons enumerated in Part I, however, the corresponding provisions of 21 U.S.C. § 848(j) may be applied pursuant to the Savings Statute. It is important to reiterate that the application of § 848(j) has no practical effect here given that the more favorable standard was applied in this case.

a criminal case is adjudicated, but they do not change the substantive law of crimes.

It is important to note that the substantive law applied in this case has remained unchanged since before defendant killed Barbara White. The Anti-Drug Abuse Act, 21 U.S.C. § 848(e)(1)(A), which outlaws the conduct for which defendant was tried and convicted—intentional killing while engaging in a conspiracy to distribute 50 grams or more of crack cocaine—was passed by Congress in 1988 remains in effect today. See Pub. L. 100-690, 102 Stat. 4181, at § 7000 (1988); 21 U.S.C. § 848(e)(1)(A) (2006).

In sum, because the Savings Clause limits the effect of Congress's repeal of § 848(g)-(o), only the procedural provisions of the FDPA apply to this defendant, and the application of such provisions does not violate the *Ex Post Facto* Clause. See Collins, 497 U.S. at 45.

### III.

Finally, in the interest of clarity, it is important to identify which provisions of the Anti-Drug Abuse Act and the Federal Death Penalty Act apply to the prosecution and sentencing of this defendant. For the reasons stated in Part I of this Memorandum Opinion, 21 U.S.C. §848(e), (l), (m), (n), and (o) apply in this case, as do the substantive parts of subsection (j). For the reasons stated in Part II of this Memorandum Opinion, 18 U.S.C. §3593(a), (b), (d), and (e) apply in this case, as do the procedural parts of subsection (c).

Although the government argued that 21 U.S.C. § 848 should continue to apply in its entirety notwithstanding the repeal of subsections (g)-(o), government counsel suggested at trial that where any disparity appeared between the ADAA and the FDPA, the provision more favorable to the defendant should be applied. With defendant's agreement this approach was adopted at trial. Accordingly, while this Memorandum Opinion sets forth the applicable law relating to sentencing

procedure in this case, the sentencing was conducted in a manner that ensured defendant suffered no prejudice from the application of either the ADAA or the FDPA.

It is also important to note that there are almost no substantive differences between the repealed subsections of § 848 and the applicable procedural provisions of § 3593. Section 3593(a), which requires notice by the government, is substantially identical to the repealed § 848(h). Similarly, section 3593(b), which requires a separate hearing to determine the punishment to be imposed following a conviction or guilty plea, is substantially identical to the repealed § 848(i).

Sections 3593(d) & (e), which establish the procedure for the return of findings by the fact-finder, do differ in two important respects from the repealed § 848(k) and the saved § 848(l). Under § 848(k) the court must instruct the jury that it is never required to impose a death sentence, while § 3593(e) contains no such requirement. At sentencing in this case, with the agreement of both parties, the jury was instructed that it was not required to impose a death sentence. Additionally, § 848(l) gives the court authority to impose an appropriate sentence in the event the jury recommends against a death sentence; by contrast, § 3593(e) allows the jury to recommend an alternate sentence. The parties here agreed that if the jury recommended against a death sentence the Court should exercise its authority under § 848(l), as preserved by the Savings Statute, to impose a life sentence. Accordingly, the substantive differences between § 848 and § 3593 had no practical effect in this case.

In sum, while all substantive provisions of the ADAA, 21 U.S.C. § 848, remained in effect for the purposes of the trial of this case, the procedural provisions of the FDPA, 18 U.S.C. § 3593, were applicable to the sentencing of this defendant. The trial, including the sentencing phases, was conducted accordingly, except that the defendant was afforded the benefit of any conflict between

the ADAA and the FDPA.

This memorandum opinion elucidates the reasons underlying the March 30, 2007 Order denying defendant's motion to dismiss the government's notice of special findings and notice of intent to seek the death penalty.

Alexandria, Virginia
January 9, 2008

_____/s/_____
T.S. Ellis, III
United States District Judge